UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EUGENE MULUHKOH TENENG,

Petitioner,

v.

CHRISTOPHER LAROSE, warden of Otay Mesa Detention Center, et al.,

Respondents.

Case No.: 3:26-cv-04798-RBM-SBC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

Pending before the Court is Petitioner Eugene Muluhkoh Teneng's[1] ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. (Doc. 1.) For the reasons below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner, a citizen of Cameroon, entered the United States through the Mexico border on January 8, 2026, when he was immediately taken into custody. (Doc. 1 ¶¶ 3, 17.) He received a negative credible fear determination after his initial interview with an

[1] The Court notes that Petitioner's last name is spelled in several different ways in the record: "Tenent" in the docket for this case, "Teneng" in the Petition itself, and "Teneneg" in the documents filed in support of the Government's Return. For clarity, this Order applies to the noncitizen with the A-Number: A 221-391-050.

asylum officer, but an immigration judge later vacated that negative determination. (Doc. 5 at 2 (citing Doc. 5-3 at 1–2).) On February 3, 2026, Petitioner was issued a Notice to Appear, which initiated removal proceedings against him pursuant to 8 U.S.C. § 1229a. (*Id.*) Petitioner's individual merits hearing was held on May 15, 2026. (*Id.*) The immigration judge denied Petitioner's asylum application, ordered him removed to Cameroon, and granted him withholding of removal to Cameroon under the Convention Against Torture ("CAT"). (Doc. 5-5 at 1–3.) On June 1, 2026, Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"). (Doc. 1 ¶ 1.)

Petitioner filed his Petition on August 21, 2026. (*Id.*) The Court set a briefing schedule shortly thereafter. (Doc. 2.) On August 31, 2026, Respondents filed their Return. (Doc. 5.) On September 8, 2026, Petitioner filed his Traverse. (Doc. 6.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

The Parties agree that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). (*See* Doc. 6 at 2; Doc. 5 at 2.) Accordingly, the issue before the Court is whether, under the circumstances of this case, applying the mandatory detention provisions of § 1225(b) violates Petitioner's due process rights. Petitioner argues that his detention has become prolonged in violation of the Fifth Amendment's Due Process Clause. (Doc. 1 ¶¶ 33–44.) Respondents argue that Petitioner's "detention is mandated by 8 U.S.C.

§ 1225(b)(1)(B)(ii) until the conclusion of his removal proceedings," and that "even if the Court infers a constitutional right against prolonged mandatory detention, Petitioner's claim still fails." (Doc. 5 at 4–10.)[2]

The Court finds that an unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process, and that Petitioner's detention has become unreasonably prolonged.

**A. Due Process**

Respondents argue that "inadmissible arriving noncitizens seeking initial entry into the United States . . . have no due process rights 'other than those afforded by statute.'" (Doc. 5 at 6–7 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)).) The Court recently explained its rationale for rejecting Respondents' argument. *See Xie v. LaRose*, Case No.: 3:26-cv-01116-RBM-MMP, 2026 WL 836351, at *2–3 (S.D. Cal. Mar. 26, 2026). The Court incorporates its reasoning in *Xie,* makes the same findings here, and "joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020).

**B. Prolonged Detention**

The Court applies a six-factor balancing test to analyze whether detention under § 1225(b) has become unreasonably prolonged. *See id.* at 773. Under this test, the Court considers:

---

[2] Respondents also argue that the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g). (Doc. 5 at 3–4.) The Court has consistently rejected this argument, *see Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1161–62 (S.D. Cal. 2025), and does so again here for the same reasons. Petitioner is challenging his detention under the Fifth Amendment's Due Process Clause. He is thus enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025) (emphasis in original).

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025).

As to the first factor, which has been described as "the most important," *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), Petitioner has been detained for about eight months. (*See* Doc. 1 ¶ 17.) Respondents argue that this period of detention "falls significantly short of the length courts have found to raise due process concerns." (Doc. 5 at 8.) As another court in this District noted, though, "[c]ourts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable." *Abdul Kadir v. Larose*, Case No.: 25cv1045-LL-MMP, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) (collecting cases); *see also Akhtar v. Larose*, Case No.: 3:26-cv-00982-RBM-MMP, 2026 WL 905086, at *2 (S.D. Cal. Apr. 2, 2026) (six-and-a-half-month detention weighed in favor of finding it was unreasonably prolonged). The length of detention thus weighs in Petitioner's favor.

As to the second factor, the Court finds that the "undetermined, but likely significant, period of mandatory detention through the appeals process" weighs in favor of Petitioner. *Gao*, 805 F. Supp. 3d at 1111; *accord Guatam v. Corr. Corp. of Am.*, Case No.: 3:25-cv-3600-JES-DEB, 2026 WL 25846, at *5 (S.D. Cal. Jan. 5, 2026) ("a removal order may not become final until after the appeals [the petitioner] could file, to both the Board of Immigration Appeals and Ninth Circuit"); *Masood v. Barr*, Case No. 19-cv-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("The BIA appeal . . . [is a] perfectly legitimate proceeding[] he is legally entitled to pursue," and the respondents "cannot predict with any degree of confidence when the BIA appeal will be resolved," which "could lead to further proceedings that might take up many more months, or even years.").

As to the third factor, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a

bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Petitioner is detained at Otay Mesa Detention Center, the conditions of which other courts have found "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773 (citation omitted). This factor weighs in Petitioner's favor.

The fourth and fifth factors are neutral, as there is nothing in the record to suggest that either Party has been responsible for delays in the removal proceedings. As to the sixth factor, the immigration judge denied Petitioner's application for asylum but granted him withholding of removal to Cameroon under CAT. (Doc. 5-5 at 1–3.) Therefore, this factor weighs slightly in Petitioner's favor. *See Asadimofarah v. Larose*, Case No.: 3:26-cv-00618-RBM-BJW, 2026 WL 891616, at *3 (S.D. Cal. Apr. 1, 2026).

Four of the factors, including "the most important one," weigh in Petitioner's favor, and none weigh against him. *Banda*, 385 F. Supp. 3d at 1118. Therefore, the Court finds that Petitioner's detention under § 1225(b) has become unreasonably prolonged and that due process requires that he be provided with a bond hearing.

## IV. CONCLUSION

For the reasons above, the Petition (Doc. 1) is **GRANTED**.

1. The Government is **ORDERED** to provide the noncitizen with an individualized bond hearing before an immigration judge **within fourteen (14) days** of the entry of this Order, unless the noncitizen requests a continuance, to determine whether his continued detention is warranted.
2. If the noncitizen does not request a continuance, and no hearing occurs **within fourteen (14) days** of entry of this Order, the noncitizen **SHALL** be released from custody.
3. At the bond hearing, the Government **SHALL** bear the burden of establishing by clear and convincing evidence that the noncitizen poses a danger to the community or a risk of flight.
4. If bond is appropriate, the immigration judge **SHALL** consider alternative

conditions of release and the noncitizen's ability to pay.[3]

5. The Government **SHALL FILE** a status report **within 5 days** of providing the noncitizen with a bond hearing indicating whether and when the noncitizen received a bond hearing, and the outcome of that bond hearing.
6. The Government **SHALL** make the audio recording of the bond hearing available to the noncitizen and his counsel upon request.

**IT IS SO ORDERED.**

DATE: September 8, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[3] *See Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017) ("A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests.").